**651·15**

No. _____

ORIGINAL

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

Joseph Michael Pierce,

Appellant/Petitioner;

vs.

The State of Texas,

Appellee/Respondent.

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUL 30 2015

Abel Acosta, Clerk

---

Appellant's Petition for Discretionary Review

---

In Appeal No. 12-14-00073-CR

Court of Appeals

for the Twelfth Judicial District

Tyler, Texas

FILED IN
COURT OF CRIMINAL APPEALS

JUL 30 2015

Abel Acosta, Clerk

Joseph Michael Pierce

Petitioner, Pro Se

TDCJ-CID #01919200

Stiles Unit

3060 FM 3514

Beaumont, Texas 77705

Appellant Requests Oral Argument

# LIST OF PARTIES

**APPELLANT**

Joseph Michael Pierce

**APPELLEE**

The State of Texas

**DEFENSE ATTORNEY AT TRIAL**

On the Original Plea and Adjudication
Jason Ellis
Attorney at Law
120 South Broadway, Suite 109
Tyler, Texas 75702
903-705-6236

**STATE'S ATTORNEY AT TRIAL**

On the Original Plea and Adjudication
Jacob Putman and Chris Gatewood
Smith County Criminal District Attorney's Office
100 North Broadway, 4th Floor
Tyler, Texas 75702
903-590-1720

**APPELLANT'S ATTORNEY AT 12TH COURT OF APPEALS**

James Huggler
Attorney at Law
100 East Ferguson, Suite 805
Tyler, Texas 75702
903-593-2400

**APPELLEE'S ATTORNEY AT 12TH COURT OF APPEALS**

Michael West
Smith County Criminal District Attorney's Office
100 North Braodway, 4th Floor
Tyler, Texas 75702
903-590-1720

**STATE'S PROSECUTING ATTORNEY**

P.O. Box 12405
Austin, Texas 78711

# TABLE OF CONTENTS

List of Parties ...................................................... ii

Index of Authorities ................................................ iv

Statement Regarding Oral Argument ................................... 1

Statement of the Case ............................................... 1

Statement of Procedural History ..................................... 2

Reasons for Review .................................................. 3

Reason for Review One:
When a motorist touches the fog line that separates the road from the improved shoulder, does this constitute driving on the improved shoulder under Texas Transportation Code § 545.058(a)?

Reason for Review Two:
Should the Twelfth Court of Appeals have abated the appeal and remanded the case back to the trial court for express findings of fact where there exist a central issue that is dispositive to the case and the existence of implicit findings are ambiguous or insufficient to resolve the reasonable suspicion for the stop?

Reason for Review Argument One ...................................... 4

Reason for Review Argument Two ..................................... 10

Prayer for Relief .................................................. 13

Certificate of Service ............................................. 14

Verification or Inmate Declaration ................................. 14

Appendix A: Court of Appeals Opinion ............................... 15

Appendix B: Appellant's Brief on Appeal ............................ 24

---

# INDEX OF AUTHORITIES

**Statutes**

Tex. Code Crim. Proc. Ann. art. 38.23 (West 2013) ........................... 9

Tex. Transp. Code. Ann. § 545.058 (West 2013) .................... 4, 8, 9, 12


**Cases**

Ford v. State, 158 S.W.3d 488 (Tex.Crim.App.2005) .......................... 8

Goudeau v. State, 209 S.W.3d 713 (Tex.App.—Houston [14th Dist] 2006) ...... 9

Maxwell v. State, 73 S.W.3d 278 (Tex.Crim.App.2002) ....................... 12

State v. Elias, 339 S.W.3d 667 (Tex.Crim.App.2011) ................... 12, 13

State v. Mendoza, 365 S.W.3d 666 (Tex.Crim.App.2012) ...................... 13

United States v. Granado, 302 F.3d 421 (5th Cir.2002) ...................... 9

United States v. Lopez-Valdez, 178 F.3d 282 (5th Cir.1999) ................. 8

Whren v. united States, 157 U.S. 806 (1996) ............................... 8

No. _____

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

---

Joseph Michael Pierce,
            Appellant/Petitioner;

vs.

The State of Texas,
            Appellee/Respondent.

---

Appellant's Petition for Discretionary Review

---

TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

Appellant respectfully submits this Petition for Discretionary Review and moves that this Honorable Court grant review of this cause and offers the following in support thereof:

STATEMENT REGARDING ORAL ARGUMENT

The Appellant requests oral argument in this case because such argument may assist the Court in applying facts to the issues raised. It is suggested that oral argument may help simplify the facts and clarify the issues and, also, to shed light on the State's position on the issues since the State waived argument on appeal.

STATEMENT OF THE CASE

Appellant was indicted for possession of more than four hundred grams of methamphetamines. At a pre-trial suppression hearing, Appellant sought to

suppress the evidence of methamphetamines seized pursuant to a traffic stop. The trial court denied the motion to suppress over Appellant's objection that there was no reasonable suspicion to initiate the traffic stop. The trial court refused to give a reason for the denial. At trial, the trooper recanted his suppression hearing testimony that touching or driving on the fog line was a traffic violation. The jury convicted Appellant and assessed his punishment at seventy years confinement and a fine of $250,000.00. The court of appeals affirmed the conviction, holding that the trooper had reasonable suspicion to initiate a traffic stop and that the trial attorney was not ineffective for failing to request findings of fact and conclusions of law. This petition challenges those holdings.

## STATEMENT OF PROCEDURAL HISTORY

In Cause No. 114-0648-13 the Appellant was charged with the felony offense of possession with intent to deliver methamphetamine, more than 400 grams. The Appellant was convicted of such offense and appealed the conviction. The court of appeals affirmed the conviction. Pierce v. State, No. 12-14-00073-CR (Tex. App.—Tyler, delivered April 30, 2015)(Not designated for publication). No motion for rehearing was filed.

# REASONS FOR REVIEW

Reason for Review One:

When a motorist touches the fog line that separates the road from the improved shoulder, does this constitute driving on the improved shoulder under Texas Transportation Code § 545.058(a)?

Reason for Review Two:

Should the Twelfth Court of Appeals have abated the appeal and remanded the case back to the trial court for express findings of fact where there exist a central issue that is dispositive to the case and the existence of implicit findings are ambiguous or insufficient to resolve the reasonable suspicion for the stop?

## REASON FOR REVIEW ARGUMENT ONE

When a motorist touches the fog line that separates the road from the improved shoulder, does this constitute driving on the improved shoulder under Texas Transportation Code § 545.058(a)?

The question in this case is whether a police officer has probable cause or reasonable suspicion for a traffic stop when the officer observes the tires of a motorist's vehicle touch the fog line[1] that separates the road from the improved shoulder, and whether a court of appeals' sanctioning of a trial court's conclusion of law that it does calls for an exercise of the Court of Criminal Appeals' power of supervision.

**A Brief Discussion of the Facts Explaining the Incident in Which the Traffic Stop was Initiated.**

On February 22, 2013, a little after midnight, Trooper Jeremy Frazier of the Texas Department of Public Safety was sitting on the eastbound side of Interstate 20 at a scale house with his vehicle facing northward. Trooper Frazier testified that he had observed Appellant's vehicle cross the fog line onto the shoulder of the road travelling eastbound. Because his vehicle was facing northward, the alleged action was not captured on the trooper' vehicle recorder.

Trooper Frazier pulled out onto the road and followed the vehicle. According to Trooper Frazier, he wanted to "observe the vehicle and see if it commits any other traffic violations, observe the driving. It could be somebody's on their cell phone, it could be that they're intoxicated." Trooper Frazier follows Appellant for roughly 1 minute and 30 seconds when he then observes

---

1. Appellant's use of the term "fog line" is also referred to as the "white line" and the "line separating the [road] from the shoulder" in the transcripts.

the vehicle touch the fog line—but not cross it.[2] Trooper Frazier turned on his emergency lights shortly after seeing this, testifying that it was at this point that he decided to initiate a traffic stop.[3]

Trooper Frazier told Appellant, "Reason for the stop, when I got there behind you, I noticed you hit that white line a few times. I don't know if you were just watching me behind you."[4] Trooper Frazier did not testify that Appellant appeared to be intoxicated while driving, that he was driving in a dangerous manner or erratically, swerving or veering from side to side, or that he was concerned that Appellant may be fatiqued or impaired. Nor does the video show this kind of behaviour.

According to Trooper Frazier, when he asked Appellant for his driver's license, Appellant told him that his license had been suspended, that Appellant was acting overly nice, and that Appellant's passenger was acting overly nervous. Trooper Frazier also noticed that Appellant and his passenger had lots of sores on them, which he associated with methamphetamine use. Trooper Frazier then asked Appellant to step out of the vehicle and into the trooper's vehicle to ask him some questions. Trooper Chris Baker arrived shortly afterwards.

A subsequent search of Appellant's vehicle resulted in the seisure of the methamphetamines used against him at trial. In a conversation shorty after

---

2. It should be noted that Trooper Frazier's testimony is inconsistant as to whether the vehicle touched the fog line once or several times, an action that he believed was the same as driving on the improved shoulder.

3. There is a reasonable inferrence from Trooper Frazier's testimony that since he was only observing Appellant's vehicle prior to this, he would not have initiated a traffic stop if the vehicle had not touched the fog line while he was behind it.

4. Specifically, Trooper Frazier stated that this occurred when he was driving behind him, not earlier. Trooper Frazier stated that he was honest with Appellant when he told him the reason for pulling him over.

---

the evidence was seized—that was captured on the vehicle recorder—Trooper Baker asks Trooper Frazier what he pulled Appellant over for. Trooper Frrazier told him it was for "driving on the white line." Trooper Frazier then told Trooper Baker that he asked Appellant if he was looking back at him.[5]

Trooper Frazier made out his incident report on February 27, 2013. The report indicated that Trooper Frazier observed Appellant commit a traffic violation at which point he activated his emergency lights. Trooper Frazier testified that this was consistent with the video which shows Appellant touch the fog line—according to his testimony—and then he activates the emergency lights. The report does not indicate that Trooper Frazier observed Appellant commit a traffic violation, activated his emergency lights, then had to enter traffic, follow Appellant to catch up with him and then follow him for a while before pulling him over. Moreover, the report indicates that the traffic violation occurred at mile marker 548—not at mile marker 546 where Appellant first passed Trooper Frazier.

Appellant sought to suppress all evidence from the traffic stop. The trial court held a hearing on the motion to suppress. The court denied the motion. Appellant requested a reason for the denial of the motion, to which the court responde, "I'm not going to answer your question. I don't really discuss the reasons for court rulings .... That's the sort of instructions they give you at judge school [,] just make a ruling."

At trial, Trooper Frazier recanted his earlier statement about driving on the fog line being the same as driving on the improved shoulder. Trooper

---

5. This is now twice in the video that Trooper Frazier indicated that the reason he pulled Appellant over was for driving on the fog line—while he was immediately behind him.

Frazier now testifies that driving on the line is not the same as driving on the improved shoulder; that you actually "got to cross over the white line" to be considered driving on the shoulder. A jury convicted Appellant as charged.

Did the Court of Appeals Misunderstand or Overlook the Specific Incident in Which Trooper Frazier had Based his Traffic Stop? Or did they Hold that Touching the Fog Line Established Reasonable Suspicion or Probable Cause?

In its memorandum opinion, the Twelfth Court of Appeals made a de novo review of the trial court's denial of Appellant's motion to suppress. However, in doing so, the court of appeals could not rely on express findings of fact from the trial court. Instead, the court of appeals could only view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supporting its ruling. (Opinion at 4-5).

Specifically, the court of appeals focused its review on whether the record supported an implicit finding that Trooper Frazier saw Appellant driving on the improved shoulder. Based on their belief that the trial court had made a determination of this historical fact, which turned on Trooper Frazier's credibility and demeanor, the court of appeals gave due dilligence to the trial court's ruling and held that the trial court did not abuse its discretion by denying Appellant's motion to suppress. (Opinion at 4-5).

The court of appeals focus on the driving on the shoulder incident is a misunderstanding of the facts of the case. The court has overlooked Trooper Frazier's testimony, the video recording, and the incident report—all showing that Trooper Frazier pulled Appellant over for touching the fog line while he was behind him, not for the earlier incident. The court also overlooked the trooper's belief that driving on the fog line was driving on the improved shoulder.

In his appellate brief, Appellant focused his appeal issue on the contention that Trooper Frazier had indicated multiple times that he initiated the traffic stop because Appellant's vehicle touched the fog line while he was behind him. (Brief at 10, 13).

Appellant argued that Trooper Frazier did not have a reasonable suspicion or probable cause to support the traffic stop for Appellant touching the fog line. In order to stop or briefly detain Appellant, Trooper Frazier was required to have "reasonable suspicion" that Appellant was violating the law. See Ford v. State, 158 S.W.3d 488, 492 (Tex.Crim.App.2005). Whether or not Trooper Frazier had a reasonable suspicion is evaluated from an objective perspective. Whren v. United States, 157 U.S. 806 (1996). In other words, looking at the facts available to Trooper Frazier at the moment of the investigation, would a person of reasonable caution believe that a traffic violation occurred. See United States v. Lopez-Valdez, 178 F.3d 282, 288 (5th Cir.1999).

Trooper Frazier testified at the pre-trial suppression hearing that he pulled Appellant over for touching the fog line when he was driving behind him. Trooper Frazier testified that he had "learned at the DPS academy" that "if a tire touches the white [line]", which he stated was the same as "riding on the line", then that is "the same thing as driving on the improved shoulder" because he "believe[d] the fog line is part of the improved shoulder."

Under the Transportation Code, § 545.058(a), entitled "Driving on the Improved Shoulder", the term "fog line", "white line", "line separating the road from the improved shoulder", or any other variation pertaining to the line in question, is not included or defined to be considered a part of the improved shoulder.

At trial, Trooper Frazier recanted his earlier pre-trial testimony stating

that he was "never trained that driving on top of the white line is driving on the improved shoulder," that you have to "cross over the white line." Trooper Frazier's reasonable suspicion of an alleged traffic violation cannot be based on a mistaken understanding of traffic laws. United States v. Granado, 302 F.3d 421, 423 (5th Cir.2002); Goudeau v. State, 209 S.W.3d 713, 716 (Tex.App.— Houston [14th Dist.] 2006, no pet.). And Trooper Frazier's honest but mistaken understanding of the traffic law which prompted the stop is not an exception to the reasonable suspicion requirement. Goudeau, 209 S.W.3d at 716. Trooper Frazier's misunderstanding about whether driving on the line constituted an offense cannot support a reasonable suspicion. There were no additional factors that might support a reasonable suspicion to stop.

Appellant believes that the State has conceeded to the error twice in the proceedings below. At trial, the State made no objections to an Article 38.23(a) jury instruction advanced by Appellant after Trooper Frazier recanted his previous testimony. Second, the State chose to not file an appeal brief in reply to Appellant's brief. The failure of the State to object to the jury instructions and its failure to file an appeal brief should be considered as a confession of error.[6]

Since Trooper Frazier failed to articulate specific facts that support a reasonable suspicion that Appellant had violated section 545.058, the stop and ensuing search were illegal and the evidence seized as a result thereof should have been suppressed.

---

6.  It should be noted that the court of appeals did not address the State's confession of error in its independent review of the case.

---

## REASON FOR REVIEW ARGUMENT TWO

Should the Twelfth Court of Appeals have abated the appeal and remanded the case back to the trial court for express findings of fact where there exist a central issue that is dispositive to the case and the existence of implicit findings are ambiguous or insufficient to resolve the reasonable suspicion for the stop?

The question in this case is whether the court of appeals should have instructed the trial court to make express findings of fact indicating which incident the trooper initiated the traffic stop, which would affect the final determination of the case. There are implicit factual findings by the trial court that bring about questions as to whether it denied the motion to sup-press for for touching the white line or for driving on the improved shoulder. These facts should be clarified before the court of appeals finds reasonable suspicion for the stop exists. Further, Appellant made a formal request to be given a reason for the denial of his motion to suppress.

The Court of Appeals De Novo Review of the Evidence.

To avoid repetition, Appellant incorporates the facts from his Reason for Review One herein and supplements those facts with the following:

On January 21, 2014, Appellant asked the trial court why it had denied his motion to suppress. The trial court stated, "I'm not going to answer your question. I really don't discuss the reasons for Court rulings .... That's the sort of instructions they give you at Judge school[,] is just make a ruling .. .. But anyway, because I thought it was the correct ruling is the answer." The trial court did not include any findings of fact and conclusions of law with its denial of the motion.

Up until this point, the trial court had heard testimony from Trooper Frazier of two distinct instances in which he had observed Appellant driving

on the improved shoulder. The first instance was not captured on the vehicle recorder. The second instance was captured on the vehicle recorder. Trooper Frazier testified that it was the second instance of driving on the improved shoulder that he initiated the traffic stop for. This is supported by Trooper Frazier telling both Appellant and Trooper Baker—during the stop—that this was the reason he pulled Appellant over. Trooper Frazier's incident report further cites this reason for the stop.

In the second instance, Trooper Frazier testified that the vehicle had touched the fog line. The video from the vehicle recorder does not show the vehicle's tires touch the fog line, but it does show the vehicle to the right of the lane. Trooper Frazier's testimony included his belief that touching the fog line was the same as driving on the improved shoulder.

The dispositive issue here is whether the trial court denied Appellant's motion to suppress for the first instance or the second instance, of driving on the improved shoulder.

Dealing with the first instance, the trial court would have had to find Trooper Frazier credible in his testimony of the facts involving the first issue. The fact that Trooper Frazier was inconsistant in his testimony as to how many times Appellant drove on the improved shoulder, or whether he drove on the fog line or touched it, coupled with the fact that Trooper Frazier's incident report did not offer even a scintilla of information on the first instance—nor did he explain why he did not mention it—makes it highly improbable that the trial court found Trooper Frazier credible as to the first instance. Further, the fact that Trooper Frazier testified that he did not initiate a traffic stop based on the first instance would lead a reasonable person to believe that the trial court relied on the second instance to find

reasonable suspicion for the stop.

In dealing with the second instance, the trial court would have relied on Trooper Frazier's testimony that touching the fog line was the same as driving on the improved shoulder. However, as discussed in Reason for Review One, ante, the white line that separates the road from the shoulder is not defined as being a part of the improved shoulder, which would not have made touching the fog line a traffic violation. See Texas Transportation Code § 545.058(a).

If the trial court relied on Trooper Frazier's testimony that touching the fog line was the same as driving on the improved shoulder to deny the motion to suppress, then it based its decision on a misunderstanding of the law.

These are the facts that the court of appeals based its review of the record. While the trial court is the exclusive trier of fact and judge of Trooper Frazier's testimony, Maxwell v. State, 73 S.W.3d 278, 281 (Tex.Crim App.2002), the trial court did not make such findings, and the court of appeals was not in a position to determine the credibility issue. See State v. Elias, 339 S.W.3d 667, 676 (Tex.Crim.App.2011)(instructing that appellate court should have remanded to trial court for credibility determination).

At this point, however, the record is insufficient to determine whether credibility even came into play in denying the motion to suppress. The record contains ambiguous facts dealing with two different instances of driving on the improved shoulder, neither of which the trial court has clarified its reliance.

Since the trial court did not indicate which instance the traffic stop was based—which is a dispositive issue here—the court of appeals was left with an inadequate record on which to base its review. The court of appeals should have remanded the case back to the trial court to make express findings of fact

explaining the basis in which it found reasonable suspicion for the traffic stop and whether or not Trooper Frazier's credibility affected the outcome of the motion to suppress. See State v. Mendoza, 365 S.W.3d 666, 673 (Tex.Crim. App.2012)(instructing appellate court to remand to trial court for additional findings on credibility and to clarify ambiguous factual findings); Elias, 339 S.W.3d at 676-77 (instructing appellate court to remand to trial court for additional findings on dispositive issue).

## PRAYER FOR RELIEF

For the reasons stated above, it is respectfully submitted that the Court of Criminal Appeals of Texas should GRANT this Petition for Discretionary Review.

Respectfully submitted,

Joseph Michael Pierce
#01919200
Stiles Unit
3060 FM 3514
Beaumont, Texas 77705

## CERTIFICATE OF SERVICE

I, Joseph Michael Pierce, certify that a true and correct copy of the foregoing Petition for Discretionary Review has been mailed, U.S. Mail, postage prepaid, to the Smith County Criminal District Attorney's Office, 100 North Broadway, 4th Floor, Tyler, Texas 75702, and to the State Prosecuting Attorney, P.O. Box 12405, Austin, Texas 78711, on this the 24th day of July, 2015.

I further certify that this Petition for Discretionary Review was delivered to the Stiles Unit Mailroom for mailing to the Court of Criminal Appeals of Texas on this the 24th day of July, 2015.

_Joseph Michael Pierce_
Joseph Michael Pierce

## VERIFICATION OR INMATE DECLARATION

I, Joseph Michael Pierce, TDCJ-CID #01919200, DOB 08-09-1978, being presently incarcerated in the Stiles Unit of the Texas Department of Criminal Justice, Institutional Division, Beaumont, Jefferson County, Texas, declare (certify, verify, or state) under penalty of perjury that I have read the above and foregoing petition, that the facts contained herein are true and correct, and that this petition is made in good faith.

EXECUTED, this the 24th day of July, 2015.

_Joseph Michael Pierce_
Joseph Michael Pierce

---

APPENDIX A: COURT OF APPEALS OPINION



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

APRIL 30, 2015

NO. 12-14-00073-CR

**JOSEPH MICHAEL PIERCE,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-0648-13)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

# NO. 12-14-00073-CR

# IN THE COURT OF APPEALS

## TWELFTH COURT OF APPEALS DISTRICT

## TYLER, TEXAS

| | | |
|---|---|---|
| *JOSEPH MICHAEL PIERCE,*<br>*APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Joseph Michael Pierce appeals his conviction for possession of more than four hundred grams of methamphetamines, for which he was sentenced to imprisonment for seventy years and a fine of $250,000.00. In two issues, Appellant argues that the trial court erred by overruling his motion to suppress evidence, and that his trial counsel rendered ineffective assistance. We affirm.

### BACKGROUND

Texas State Trooper Jeremy Frazier stopped Appellant on Interstate 20 in Smith County for driving on the improved shoulder. During his investigation, Trooper Frazier became suspicious of possible criminal activity. He requested consent to search the vehicle, but Appellant refused. Trooper Frazier then called for a K-9 sniff of the vehicle. The dog alerted. Trooper Frazier and another trooper searched the vehicle and located a large amount of methamphetamine inside a backpack in the back seat.

Appellant was charged by indictment with possession of four hundred grams or more of methamphetamine. He filed a motion to suppress the evidence, challenging the initial stop of the vehicle and his extended detention. After a hearing, the trial court denied the motion to suppress.

Appellant then pleaded "not guilty," and the matter proceeded to a jury trial. The trial court submitted a jury instruction under Texas Code of Criminal Procedure Article 38.23 regarding reasonable suspicion for the initial stop. The jury found Appellant "guilty" as charged and assessed his punishment at imprisonment for seventy years and a fine of $250,000.00. This appeal followed.

## MOTION TO SUPPRESS

In his first issue, Appellant argues that the trial court erred in denying his pretrial motion to suppress. Although he challenged both the initial stop and his extended detention in the trial court, he challenges only the initial stop on appeal.

### Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). When deciding a motion to suppress evidence, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

When a trial court does not make express findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011). Therefore, the prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011). When all evidence is viewed in the light most favorable to the trial court's ruling, an appellate court is obligated to uphold the ruling on a motion to suppress if that ruling is supported by the record

2

and is correct under any theory of law applicable to the case. *See Ross*, 32 S.W.3d at 856; *Carmouche*, 10 S.W.3d at 327; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

## Governing Law

A routine traffic stop closely resembles an investigative detention. *Powell v. State*, 5 S.W.3d 369, 375 (Tex. App.—Texarkana 1999, pet. ref'd); *see also United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004). Because an investigative detention is a seizure that implicates the United States and Texas Constitutions, the traffic stop must be reasonable. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). To determine the reasonableness of an investigative detention, we conduct the inquiry set forth by the United States Supreme Court in *Terry v. Ohio* and determine (1) whether the officer's action was justified at its inception and (2) whether it was reasonably related in scope to the circumstances that initially justified the interference. *See Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968); *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997).

Under the first part of the inquiry, an officer's reasonable suspicion justifies an investigative detention. *Davis*, 947 S.W.2d at 242-43. Specifically, the officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred. *Id.* at 244 (citing *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989)). A law enforcement officer may stop and briefly detain a person for investigative purposes on less information than is constitutionally required for probable cause to arrest. *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (citing *Terry*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889). An officer has reasonable suspicion to detain a person if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). This is an objective standard. *Id.* Thus, when an officer has a reasonable basis for suspecting that a person has committed an offense, the officer may legally initiate an investigative stop. *See Powell*, 5 S.W.3d at 376 (citing *Drago v. State*, 553 S.W.2d 375, 377-78 (Tex. Crim. App. 1977)).

Under the second part of the inquiry, the "investigative stop can last no longer than necessary to effect the purpose of the stop." *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). The issue is "whether the police diligently pursued a means of investigation that was

likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* at 64-65 (quoting *United States v. Sharpe*, 470 U.S. 675, 685-86, 105 S. Ct. 1568, 1569, 84 L.Ed.2d 605 (1985)). With regard to a traffic stop, an officer can conduct a license and warrants check. *Id.* at 63. An officer also may ask the driver to exit the vehicle. *See Strauss v. State*, 121 S.W.3d 486, 491 (Tex. App.—Amarillo 2003, pet. ref'd).

## Analysis

Appellant argues that the evidence found after the initial stop should be suppressed because Trooper Frazier's testimony regarding that instance was based solely on his memory and his report, which was written five days after the event. Appellant notes that the first alleged instance of Appellant driving on the improved shoulder was not recorded by Trooper Frazier's video camera. He further notes that the video recording only shows the vehicle's tires on the line and not on the improved shoulder itself.

Under the transportation code, a driver may drive on an improved shoulder only if he can do so safely and as necessary for one of seven enumerated purposes. *See* TEX. TRANSP. CODE ANN. § 545.058(a) (West 2011). At the suppression hearing, Trooper Frazier testified that he was parked sideways, or northbound, at the scale house on eastbound Interstate 20 in Smith County when he first saw Appellant's vehicle. He testified that he saw Appellant's vehicle cross over the white line on the right side that divides the interstate from the shoulder.

Trooper Frazier stated that Appellant's vehicle crossed the line by a distance of about half the width of the vehicle. The video does not show this action because of the direction the trooper's vehicle was facing at the time. Trooper Frazier pulled out behind Appellant and followed him a short distance. He testified that as he was approaching Appellant's vehicle, Appellant "rode on top of the white line."

The video shows the vehicle very far right in the lane, but does not clearly show the tires' exact relationship to the white line. The video shows no apparent necessity for the vehicle to be on or across the white line. After Trooper Frazier stopped Appellant, the video shows him asking Appellant if he had had anything to drink. Trooper Frazier testified that he asked that question because the vehicle had "crossed over the shoulder several times."

Based on our review of the record, we conclude that the record supports the trial court's implied finding that Trooper Frazier saw Appellant driving on the improved shoulder. The trial court's determination of this historical fact turned on Trooper Frazier's credibility and demeanor.

4

The trial court was the exclusive trier of fact and judge of the witness's credibility. *Maxwell*, 73 S.W.3d at 281. Accordingly, the trial court was free to choose to believe or disbelieve all or any part of his testimony. *See Ross*, 32 S.W.3d at 855. Therefore, we give almost total deference to the trial court's determination of that fact. *See Neal*, 256 S.W.3d at 281. Having given due deference to the trial court's ruling, we hold that the trial court did not abuse its discretion by denying Appellant's motion to suppress. Accordingly, we overrule Appellant's first issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Appellant contends that he received ineffective assistance of counsel and asks this court to grant a new trial.

### Standard of Review and Applicable Law

In reviewing an ineffective assistance of counsel claim, we follow the United States Supreme Court's two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). Under the first prong of the *Strickland* test, an appellant must show that counsel's performance was "deficient." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. To be successful, an appellant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.*, 466 U.S. at 688, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712.

Under the second prong, an appellant must show that the "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712. The appropriate standard for judging prejudice requires an appellant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Tong*, 25 S.W.3d at 712. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Tong*, 25 S.W.3d at 712.

Review of a trial counsel's representation is highly deferential. *Tong*, 25 S.W.3d at 712. We indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. It is

Appellant's burden to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.*; *Tong*, 25 S.W.3d at 712. Moreover, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Rarely is the record on direct appeal sufficiently developed to fairly evaluate the merits of a claim of ineffectiveness. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Thompson*, 9 S.W.3d at 813. Appellant must prove both prongs of the *Strickland* test by a preponderance of the evidence in order to prevail. *Tong*, 25 S.W.3d at 712.

**Analysis**

Appellant argues that his trial counsel was ineffective because he failed to request findings of fact and conclusions of law following the suppression hearing. He contends that without these findings and conclusions, trial counsel was unable to adequately prepare for his cross examination of Trooper Frazier at trial. However, the record shows that trial counsel performed a very thorough cross examination of Trooper Frazier, and Appellant does not explain how the trial court's findings of fact and conclusions of law might have changed it.

Appellant further contends that without findings of fact and conclusions of law, appellate counsel is unable to adequately challenge the suppression ruling on appeal. However, Appellant's burden is to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Tong*, 25 S.W.3d at 712. Appellant has not shown any reasonable probability that a request for findings of fact and conclusions of law would have changed the outcome of his trial. *See id.*

Furthermore, the record is silent as to counsel's possible strategic reasons for not requesting findings of fact and conclusions of law. Therefore, we conclude that the record is not sufficiently developed to fairly evaluate whether counsel was ineffective for this omission. *See Bone*, 77 S.W.3d at 833. Accordingly, we overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant's first and second issues, we *affirm* the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered April 30, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

7

APPENDIX B: APPELLANT'S BRIEF ON APPEAL

ORAL ARGUMENT REQUESTED

NO. 12-14-00073-CR

IN THE COURT OF APPEALS
12th JUDICIAL DISTRICT
TYLER, TEXAS

RECEIVED IN
12th COURT OF APPEALS
TYLER, TEXAS
9/10/2014 4:45:38 PM
CATHY S. LUSK
Clerk

**FILED**

9/10/2014

**Twelfth Court of Appeals
Cathy Lusk
Clerk**

JOSEPH PIERCE,
APPELLANT

VS.

THE STATE OF TEXAS,
APPELLEE

ON APPEAL IN CAUSE NUMBER 114-0648-13
FROM THE 114TH JUDICIAL DISTRICT COURT
OF SMITH COUNTY, TEXAS
HONORABLE CHRISTI KENNEDY, JUDGE PRESIDING

APPELLANT'S BRIEF

JAMES W. HUGGLER, JR.
100 E. FERGUSON, SUITE 805
TYLER, TEXAS 75702
903-593-2400
STATE BAR NUMBER 00795437

ATTORNEY FOR APPELLANT

# IDENTITY OF PARTIES AND COUNSEL

APPELLANT:
    Joseph Pierce

APPELLANT'S TRIAL COUNSEL
    Jason Ellis
    120 South Broadway, Suite 109
    Tyler, TX 75702
    903-705-6236

APPELLANT'S APPELLATE COUNSEL
    James Huggler
    100 E. Ferguson, Suite 805
    Tyler, Texas 75702
    903-593-2400
    903-593-3830 (fax)

APPELLEE
    The State of Texas

APPELLEE'S TRIAL COUNSEL
    Jacob Putman
    Chris Gatewood
    Smith County Criminal District Attorney's Office
    100 N. Broadway, 4th Floor
    Tyler, Texas 75702
    903-590-1720
    903-590-1719 (fax)

APPELLEE'S APPELLATE COUNSEL
    Michael West
    Smith County Criminal District Attorney's Office
    100 N. Broadway, 4th Floor
    Tyler, Texas 75702
    903-590-1720
    903-590-1719 (fax)

# TABLE OF CONTENTS

PAGE

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUE ONE: THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM HIS VEHICLE SINCE THE OFFICER HAD NO REASONABLE SUSPICION UPON WHICH TO BASE THE INITIAL STOP OF APPELLANT'S VEHICLE.

ISSUE TWO: COUNSEL RENDER INEFFECTIVE ASSISTANCE BY FAILING TO REQUEST FINDINGS OF FACT AND CONCLUSIONS OF LAW AT THE HEARING ON THE MOTION TO SUPPRESS.

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . 9

ISSUE ONE, RESTATED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A. Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    B. Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . 11
    C. Application. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    D. Harm Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ISSUE TWO, RESTATED. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    A. Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    B. Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    C. Application. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## STATUTES

TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2013) . . . . . . . . . . . . . . . 7
TEX. HEALTH & SAFETY CODE ANN. § 481.112(a),(f)(West 2013) . . . 1, 2, 3
TEX. TRANSP. CODE ANN. § 545.085 (West 2013) . . . . . . . . . . . . . . . 4, 13

## CASES

Aviles v. State, 23 S.W.3d 74 (Tex. App. – Houston [14th Dist.] 2000, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Bone v. State, 77 S.W.3d 828 (Tex. Crim. App. 2002) . . . . . . . . . . . . . 16
Carmouche v. State, 10 S.W.3d 323 (Tex. Crim. App. 2000) . . . . . . . . 11
Ford v. State, 158 S.W.3d 488 (Tex. Crim. App. 2005) . . . . . . . . . . . 11
Goudeau v. State, 209 S.W.3d 713 (Tex. App. – Houston [14th Dist.] 2006, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App. 1997) . . . . . . . . . 11
Hernandez v. State, 60 S.W.3d 106 (Tex. Crim. App. 2001) . . . . . . . . 13
Mitchell v. State, 68 S.W.3d 640 (Tex. Crim. App. 2002) . . . . . . . . . 16
Mosley v. State, 983 S.W.2d 249 (Tex. Crim. App. 1998) . . . . . . . . . 14
Russell v. State, 717 S.W.2d 7 (Tex. Crim. App. 1986) . . . . . . . . . . . 11
State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006) . . . . . . . . . . 18
State v. Ross, 32 S.W.3d 853 (Tex. Crim. App. 2000) . . . . . . . . . . . . 18
Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Thomas v. State, 408 S.W.3d 877 (Tex. Crim. App. 2013) . . . . . . . . . 12
United States v. Granado, 302 F.3d 412 (5th Cir. 2002) . . . . . . . . . . 13
United States v. Lopez-Valdez, 178 F.3d 282 (5th Cir. 1999) . . . . . . . 12
Whren v. United States, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## RULES

TEX. R. APP. P. 9.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
TEX. R. APP. P. 38 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
TEX. R. APP. P. 44.2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

NO. 12-14-00073-CR

| | | |
|---|---|---|
| JOSEPH PIERCE, | § | IN THE COURT OF APPEALS |
| APPELLANT | § | |
| | § | |
| VS. | § | 12th JUDICIAL DISTRICT |
| | § | |
| THE STATE OF TEXAS, | § | |
| APPELLEE | § | TYLER, TEXAS |

## APPELLANT'S BRIEF

TO THE HONORABLE COURT OF APPEALS AND THE JUSTICES THEREOF:

Comes now JOSEPH PIERCE, ("Appellant"), by and through his attorney of record, JAMES HUGGLER, and pursuant to the provisions of TEX. R. APP. PROC. 38, et seq., respectfully submits this brief on appeal

## STATEMENT OF THE CASE

Appellant was indicted in Cause No. 114-0648-13 for the felony offense of possession with intent to deliver methamphetamine, more than 400 grams. I CR 1; see TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (f) (West 2013). At trial on February 25, 2014, Appellant entered a plea of not guilty to the charged offense. IX RR 8. The jury found Appellant guilty of the offense of possession with intent to deliver a controlled

1

substance, as charged in the indictment. X RR 109.

Appellant elected to have the jury assess his punishment. At the conclusion of the punishment phase of the trial, the jury assessed his punishment at 70 years' confinement and a fine of $10,000. XI RR 71. See TEX. HEALTH & SAFETY CODE ANN. § 481.112 (f) (West 2013)(penalty range). Notice of appeal was timely filed by appellate counsel on February 26, 2014. I CR 103.

## ISSUES PRESENTED

ISSUE ONE: THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM HIS VEHICLE SINCE THE OFFICER HAD NO REASONABLE SUSPICION UPON WHICH TO BASED THE INITIAL STOP OF APPELLANT'S VEHICLE.

ISSUE TWO: COUNSEL RENDER INEFFECTIVE ASSISTANCE BY FAILING TO REQUEST FINDINGS OF FACT AND CONCLUSIONS OF LAW AT THE HEARING ON THE MOTION TO SUPPRESS.

2

## STATEMENT OF THE FACTS

As stated above, Appellant was indicted in Cause No. 114-0648-13 for the felony offense of possession with intent to deliver methamphetamine, more than 400 grams. I CR 1; see TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (f) (West 2013).

Prior to trial, Appellant filed a motion to suppress the evidence seized during the stop. II CR 2-3. At the hearing on Appellant's motion to suppress, Trooper Jeremy Frazier testified that he was patrolling a section of Interstate 20 on February 22, 2013. V RR 14-15. He stated that he was sitting on the eastbound side of the road at a scale house, with his vehicle facing north, when he observed a vehicle cross the white line onto the shoulder of the road. V RR 23. He stated that its tires "cleared the white line." V RR 23. Because his vehicle was facing northward, the alleged action was not recorded on Frazier's vehicle recorder. V RR 25.

At that point, Frazier pulled out onto the road and followed the vehicle. The subsequent actions of the driver, later identified as Appellant, were recorded on Frazier's vehicle recorder, and the CD from the recorder was introduced as State's Exhibit 1. V RR 21. After he began following Appellant, he saw Appellant drive "on top of the white line,

3

which he alleged was still driving on the improved shoulder." V RR 25.

On cross examination, the following exchange occurred:

Q. What does driving on the improved shoulder mean to you?

A. It means that they -- the tire of the vehicle touched the white line.

Q. Who taught you that?

A. I learned that at the DPS academy for training.

Q. So it's been your training that if a tire touches the white, that is driving on the improved shoulder?

A. Well, it's riding on the line. Yes, sir.

Q. Is riding on the line the same thing as driving on the improved shoulder?

A. Yes, sir. It is.

Q. So is it your -- are you telling the Court today that you believe the fog line is part of the improved shoulder?

A. Yes, sir.

V RR 54.

Frazier then stopped Appellant, and told him that he pulled him over because he touched the white line a few times. V RR 62. In his report, he stated that the stop was for driving on the improved shoulder.[1]

---

[1] Section 545.058(a) of the Transportation Code, entitled "Driving on Improved Shoulder," provides that an operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only:

(1) to stop, stand, or park;

(2) to accelerate before entering the main traveled lane of traffic;

4

V RR 64. He asked for Appellant's license and insurance. V RR 26. Appellant told him that his license had been suspended, and the passenger, Marlena Adams, provided the insurance. V RR 27-28. During the stop, he took Appellant back to his police vehicle. V RR 31. He stated that he noticed that Appellant and Adams both had a lot of sores, which he believed was a common sign of methamphetamine use. V RR 31-32. He also stated that Appellant was nervous and fidgety. V RR 34. He asked if Appellant had anything illegal in his car, such as guns, marijuana or methamphetamines, and Appellant said no. V RR 37.

Frazier then asked if he could search the vehicle and Appellant refused. V RR 38. Frazier called for a canine unit and Officer Josh Hill, a certified K-9 handler, brought his dog to the scene and ordered the dog to check the exterior of the vehicle. V RR 42,45-46; VI RR 45. The dog

---

(3) to decelerate before making a right turn;

(4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;

(5) to allow another vehicle traveling faster to pass;

(6) as permitted or required by an official traffic-control device; or

(7) to avoid a collision.

TEX. TRANSP. CODE ANN. § 545.058(a).

"alerted" at the passenger compartment of the car. V RR 46-47. Frazier and another officer, Kris Baker, searched the vehicle and found one and a half pounds of methamphetamine inside a backpack. V RR 47. Frazier then arrested Appellant and Adams. VI RR 48.

Frazier stated that he did not prepare his police report until five days after the arrest was made. VI RR 6. He acknowledged that his testimony about the first driving incident was from memory since it was not captured on the video. VI RR 11.

At the conclusion of the suppression hearing, the court stated that it would take the motion under advisement. The motion was denied on December 18, 2013. I CR 54.

At trial, Officer Frazier related the same facts about the stop. Appellant re-urged the objections he had made at the suppression hearing, and the objections were overruled. IX RR 45; 58-59. On cross examination, defense counsel revisited the issue of whether driving on the line constituted driving on the shoulder. IX RR 106. In the following exchange, Frazier admitted that driving on the line did not constitute an offense.

Q.   Well, Trooper, are you saying that the improved shoulder includes

6

the white line?

A. Once it's over the white line.

Q. Once you're past the white line?

A. Yes, sir.

Q. You told the State earlier, I think, that once you cross over the white line, that's driving on the shoulder?

A. Cross it.

Q. And that's what you stand by today, right?

A. Yes, sir.

Q. You've got to cross over the white line?

A. Yes, sir.

...

Q. And so you're saying that you were never trained that driving on top of the white line is driving on the improved shoulder? You were never trained that way?

A. No, sir.

IX RR 106; 108 (emphasis added).

At the conclusion of the evidence at trial, Appellant sought and received a jury instruction pursuant to TEX. CODE CRIM. PROC. ANN. §38.23(a) on the basis that the evidence raised a question of fact regarding the legality of the stop. XI RR 243. Appellant was subsequently convicted of the charged offense. X RR 109.

7

## SUMMARY OF ARGUMENT

In his first issue, Appellant argues that the trial court erred in denying his motion to suppress the evidence found in his vehicle because the officer did not have reasonable suspicion to initiate a stop after he thought he saw Appellant briefly cross over the fog line onto the shoulder of the road. The first instance of crossing the line was not recorded by the officer's video recorder, and the officer's recollections were based solely on memory and on a report prepared five days after the event. The video from the officer's vehicle camera only reflected that Appellant drove on the fog line briefly, which would not constitute driving on the shoulder. Therefore, the evidence found as a result of the subsequent search was inadmissible.

In the second issue, Appellant argues that the trial court counsel was ineffective at trial because he failed to request findings of fact and conclusions of law from the suppression hearing. The evidence presented during the suppression suggested that the initial stop was illegal, thus bringing into question the legality of the subsequent search. However, it is impossible to review the specific reasoning for the trial court's ruling on the motion with findings of fact and conclusions of law. Consequently,

8

trial counsel should have made the request.

## ARGUMENT AND AUTHORITIES

### ISSUE ONE (RESTATED): THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM HIS VEHICLE SINCE THE OFFICER HAD NO REASONABLE SUSPICION UPON WHICH TO BASED THE INITIAL STOP OF APPELLANT'S VEHICLE.

Appellant first asserts that the trial court committed reversible error in denying his motion to suppress since the controlled substance evidence was seized pursuant to an illegal stop. The officer had no reasonable suspicion to stop Appellant; thus, the evidence found in the vehicle was inadmissible and should have been suppressed.

### A. Facts

Prior to trial, counsel filed a Motion to Suppress (II CR 2-3) and the hearing on the motion was conducted prior to trial. XI RR 35. During the hearing, Trooper Jeremy Frazier testified that he was perpendicular to the highway on the side of the road at a scale house when he observed Appellant's vehicle cross the white line onto the shoulder of the road. V RR 23. Because his vehicle was facing northward, the alleged action was

9

not recorded on Frazier's vehicle recorder. V RR 25. Frazier then followed the vehicle. He stated that he saw Appellant drive "on top of the white line," which he believed was driving on the improved shoulder; at trial, he admitted that this was a mistake. V RR 25. Frazier then stopped Appellant, and informed him that he pulled him over because he touched the white line a few times. V RR 62. His report stated that the stop was for driving on the improved shoulder. V RR 64.

At the conclusion of the suppression hearing, Appellant argued that the evidence was inadmissible because there was no evidence on the video that Appellant had driven on the improved shoulder. VI RR 56-59. The first instance was observed from a difficult vantage point and was not recorded by Frazier's video recorder, nor mentioned in his report. IV RR 57-59. His testimony regarding his observation was based on memory alone. The second instance For these reasons, Appellant argued that Frazier did not have probable cause to stop the vehicle. VI RR 65. The court denied Appellant's motion. I CR 54.

10

## B. Standard of Review

An appellate court reviews the denial of a motion to suppress under a bifurcated standard of review, giving deference to the trial court's findings of historical fact supported by the record and reviewing de novo the trial court's application of search and seizure law. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

When a police officer stops a defendant without a warrant and without the defendant's consent, the State has the burden at a suppression hearing of proving the reasonableness of the stop. Russell v. State, 717 S.W.2d 7, 9-10 (Tex. Crim. App. 1986). A "stop" by a law enforcement officer "amounts to a sufficient intrusion on an individual's privacy to implicate the Fourth Amendment's protections" against unreasonable searches and seizures. Carmouche, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). In order to stop or briefly detain an individual, an officer must have "reasonable suspicion" that an individual is violating the law. Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

Whether or not an officer has reasonable suspicion is evaluated from an objective perspective. Whren v. United States, 517 U.S. 806, 116 S. Ct.

11

1769, 135 L. Ed. 2d 89 (1996); United States v. Lopez-Valdez, 178 F.3d 282, 288 (5th Cir. 1999); Aviles v. State, 23 S.W.3d 74, 77 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd). In other words, looking at the facts available to the officer at the moment of the investigation, would a person of reasonable caution believe that a traffic violation occurred. Lopez-Valdez, 178 F.3d at 288; Aviles, 23 S.W.3d at 77.

## C. Application

At the suppression hearing, the only justification offered for stopping Appellant was Frazier's unverified belief that he had committed a traffic violation by driving on the shoulder. The critical issue argued by both sides was whether any movement made by Appellant took him over the fog line and onto the shoulder.[2]

There were two instances in which Appellant allegedly drove on the shoulder. Frazier's testimony about the first instance was unsupported by the video. He recalled at trial that, event though he was sitting near

---

[2] Appellant maintained this position at trial, repeatedly raising objections based on the motion to suppress and asserting in his arguments a violation of the Fourth Amendment that would bar the jury from considering the State's evidence. Counsel also requested and received an instruction in the jury charge on the statutory exclusionary rule. *See* Tex. Code Crim. Proc. Ann. §38.23(a) (West 2013). Therefore, Appellant did not waive his challenge to the trial court's ruling on his pretrial motion to suppress. *See Thomas v. State*, 408 S.W.3d 877, 885 (Tex. Crim. App. 2013).

12

a scale house and was perpendicular to the highway, he observed Appellant cross the line. This alleged offense was not captured by the video.

The second alleged incident was shown on the video and reflects that Appellant drove on the line. Frazier's confusion about whether this constituted an offense was reflected in his testimony. He first stated that driving on the line was the same as driving on the shoulder; however, at trial, he admitted that it did not constitute an offense. An officer's reasonable suspicion of an alleged traffic violation cannot be based on a mistaken understanding of traffic laws. United States v. Granado, 302 F.3d 421, 423 (5th Cir. 2002); Goudeau v. State, 209 S.W.3d 713, 716 (Tex. App.--Houston [14th Dist.] 2006, no pet.). And an officer's honest but mistaken understanding of the traffic law which prompted a stop is not an exception to the reasonable suspicion requirement. Goudeau, 209 S.W.3d at 716. Frazier's misunderstanding about whether driving on the line constituted an offense cannot support a reasonable suspicion. There were no additional factors that might support a reasonable suspicion to stop.

Since Frazier failed to articulate specific facts that support a reasonable suspicion that Appellant had violated section 545.058, the stop

13

and ensuing search were illegal and the evidence seized as a result thereof should have been suppressed.

## D. Harm Analysis

Since the evidence was seized in violation of Appellant's Fourth Amendment rights, the harm analysis for the erroneous admission of evidence is Rule 44.2(a)'s constitutional standard. Hernandez v. State, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). The reviewing court must reverse the trial court's judgment, unless the court determines beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment. TEX. R. APP. P. 44.2(a). In applying the "harmless error" test, the court must ask whether there is a "reasonable possibility" that the error might have contributed to the conviction. Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

In the present case, the challenged evidence formed the entire basis for Appellant's conviction and punishment. Since there would be no reasonable doubt that the error did not contribute to Appellant's conviction, this Court should reach the inevitable conclusion that Appellant was harmed by its admission.

14

## ISSUE TWO (RESTATED): COUNSEL RENDER INEFFECTIVE ASSISTANCE BY FAILING TO REQUEST FINDINGS OF FACT AND CONCLUSIONS OF LAW AT THE HEARING ON THE MOTION TO SUPPRESS.

Appellant maintains that trial counsel was ineffective for failing to request findings of fact and conclusions of law after the motion to suppress hearing. By failing to request and obtain these findings, defense counsel was not given the benefit of the Court's reasoning and was limited in the preparation of his cross examination of Trooper Frazier at trial. The lack of findings also harms his ability to challenge the ruling on the motion to suppress on appeal.

## A. Facts

After the hearing on the motion was conducted prior to trial, the court stated that it would take the motion under advisement. VI RR 69. Neither side requested findings of fact or conclusions of law. The motion was subsequently denied in an order dated December 18, 2013. I CR 54. The court did not include findings of fact and conclusions of law with its order.

## B. Standard of Review

The standard of review for ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and Bone v. State, 77 S.W.3d 828 (Tex. Crim. App. 2002). To prevail, appellant must first show that his counsel's performance was deficient. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Bone, 77 S.W.3d at 833. "Specifically, [an] appellant must prove, by a preponderance of the evidence, that his counsel's representation fell below the objective standard of professional norms." Bone, 77 S.W.3d at 833. Next, an appellant must show that this deficient performance "prejudiced his defense," meaning that he must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. Id. (quoting Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)). The appellant must show that 'there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" Id. (quoting Strickland, 466 U.S. at 695, 104 S. Ct. 2052). Thus, the reviewing court must determine whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced

16

a just result. Strickland, 466 U.S. at 686, 104 S. Ct. at 2064.

## C. Application

In the present case, the failure of defense counsel to request findings of fact and conclusions of law severely limited his ability to prepare for cross examination of Frazier since he was not given the benefit of know the reasoning behind the court's ruling on the motion to suppress. It is well settled that a non-prevailing party should attempt to get the rationale for the trial court's ruling on the record through either a verbal explanation at the hearing or express findings of fact and conclusions of law. State v. Ross, 32 S.W.3d 853, 858 (Tex. (Tex. Crim. App. 2000). Without this rationale, defense counsel would have been unable to combat the court's concerns about the evidence.

Also, defense counsel's failure to make a proper request limits Appellant's ability to make a precise challenge to the court's ruling. When the trial court fails to file findings of fact, the reviewing court must view the evidence in the light most favorable to the ruling, and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. Ross, 32 S.W3d at 856. It is

17

difficult to ascertain the focus of the claimed error when there is no reasoning reflected for the court's decision. As noted in State v. Cullen, 195 S.W.3d 696, 698 (Tex. Crim. App. 2006), a failure to enter findings of fact when timely requested "leaves appellate courts with nothing to review except a one-word ruling and forces the courts of appeals to make assumptions about the trial court's ruling. The ruling could be based on a mistake of law, on the trial court's disbelief of the testimony presented, or even on a clerical error." Thus, without findings fact and conclusions of law, Appellant's ability to appeal the error is limited.

Since counsel's failure to request the findings of fact and conclusions of law affected his ability to present a defense at trial, and continues to hinder his ability to appeal the ruling, his representation fell below the objective standard of professional norms and prejudiced his defense.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays that the judgment be reversed and the cause remanded for a new trial.

Respectfully submitted,

/s/ James Huggler
James W. Huggler, Jr.
State Bar Number 00795437
100 E. Ferguson, Suite 805
Tyler, Texas 75702
903-593-2400
903-593-3830 fax

ATTORNEY FOR APPELLANT